UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-21984-GAYLES/OTAZO-REYES

**AARON SILBERMAN, an individual,
and AMJ MISIL AB LLC, a Florida
Limited Liability Company**,

    Plaintiffs,

v.

**PREMIER BEAUTY AND HEALTH
LLC, a Florida Limited Liability Company,
JORGE HANE, an individual, and
FLORENICA HANE, an individual,
jointly and severally**,

    Defendants.
_____

**PREMIER BEAUTY AND HEALTH
LLC, a Florida Limited Liability Company,
JORGE HANE, an individual, and
FLORENICA HANE, an individual**,

    Counter-Plaintiffs,

v.

**AARON SILBERMAN, an individual,
AMJ MISIL AB LLC, a Florida Limited
Liability Company, SALOMON MISHAAN,
an individual, and SARITA MISHAAN,
an individual**,

    Counter-Defendants.
_____/

## **ORDER**

    **THIS CAUSE** comes before the Court on Counter-Defendants', Aaron Silberman

("Silberman"), AMJ Misil AB LLC ("AMJ"), Salomon Mishaan ("Salomon"), and Sarita Mishaan

("Sarita"), Motion to Dismiss Counter-Plaintiffs' Counterclaim (the "Motion") [ECF No. 55]. The Court has considered the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## BACKGROUND[1]

I.   **Factual Background**[2]

In 2018, Florencia Hane ("Florencia") formed Premier Beauty and Health LLC ("Premier") to conduct business in the health and beauty markets. Florencia and her husband, Jorge Hane ("Jorge"), have decades of experience in consumer sales and have successfully marketed and sold a variety of products on television and other mediums. Around 2019, Premier decided to shift its business from nutrition-related products to the sale of skin care products infused with cannaboid ("CBD") ingredients. Because Premier lacked funds and was not generating sufficient revenue to pay for the processing and testing of its CBD products, it decided to sell portions of its membership interests. In May 2019, Florencia and Jorge met with Sarita and Salomon to discuss Premier. Jorge explained Premier's new focus on cosmetic CBD products. Sarita stated that her son-in-law, Silberman, recently left a CBD company and had an abundance of experience in the CBD market. She also explained that Silberman was seeking new employment. Florencia and Jorge saw working with Silberman as a great business opportunity.

On May 31, 2019, Salomon met with Jorge and Florencia to discuss the terms of both Silberman's potential employment with Premier as the Chief Operating Officer ("COO") and Salomon's potential purchase of membership interests in Premier. On August 13, 2019, Silberman

---

[1] As the Court proceeds on a motion to dismiss, it accepts Counter-Plaintiffs' allegations in the Counterclaim as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

[2] Underlying this action is a family dispute; therefore, the Court begins its recitation of the factual allegations by identifying the family relationships. Counter-Plaintiffs Florencia Hane and Jorge Hane are married. Jorge is Counter-Defendant Sarita's uncle. Sarita is married to Counter-Defendant Salomon. Their daughter is married to Counter-Defendant Silberman.

and Salomon met with Florencia and Jorge to further discuss the details of Silberman's employment and of Salomon's purchase of membership interests. Salomon and Sarita required that Silberman be hired as the COO for them to purchase membership interests in Premier. Relying on Salomon and Sarita's representation that Silberman had experience in the CBD market, Premier and Florencia agreed to employ Silberman and sell membership interests in Premier to Salomon.[3] On August 14, 2019, Salomon texted Jorge stating: "I promised to let you know about the business, so we are in. I need a maximum of 15 days to transfer the 400,000 but you have a partner." [ECF No. 47 at 14 ¶ 31].

To effectuate the sale, Silberman and his wife formed AMJ at Salomon's request and acted as managers of AMJ. The purchase of membership interests was done through AMJ and funded by Salomon. AMJ purchased 10% of Premier's membership interests for $400,000.00. Additionally, Premier hired Silberman as its COO at a salary of $10,000.00 a month. As Premier began to experience success, Salomon demanded to be more involved in the business. At or about the end of January 2020, Salomon sought to increase his membership interests in Premier, offering to purchase an additional 40% of Premier's membership interests for $200,000.00. Salomon also demanded to have veto power over whom Premier sold additional membership interests. While Premier and Florencia did not want to sell that percentage, the parties agreed that Salomon, through AMJ, would purchase an additional 10% of Premier's membership interests for $50,000.00. Silberman did not participate in these discussions.

As Premier's COO, Silberman was authorized to sign checks for purchases, had no limitations as a signatory and authorized user of Premier's bank accounts, held decision-making

---

[3] Counter-Plaintiffs allege that Premier and Florencia "would not have hired Silberman in the first place" if not for "Salomon, Sarita, and Silberman's representations that he possessed the requisite experience to be the COO of Premier because of his prior experience in the CBD business." [ECF No. 47 at 14 ¶¶ 29–30].

authority over Premier's day-to-day business operations, and oversaw processing and fulfillment. Silberman also accompanied Florencia and Jorge on a lab visitation in Boca Raton, Florida, a fulfillment pickup, and a business trip to the ShopHQ headquarters in Minneapolis, Minnesota, in which he was involved in presentations to the producers, marketing team, and legal department. Moreover, Silberman acted as Salomon's "authorized representative." Counter-Plaintiffs allege that it quickly became apparent that Silberman lacked the industry knowledge that Salomon and Sarita stated he had and that he would not fulfill his duties as COO. Counter-Plaintiffs also allege that Silberman would arrive late to work and leave early, take multiple vacations, and use Premier's office to work on another business venture with his wife.

The relationship between the parties ultimately deteriorated. At the beginning of 2020, Premier was scheduled to film its next big product package for television. Florencia planned for her, Jorge, and a spokesperson to travel to Minneapolis. Silberman insisted on going as well, but he was required to stay in Miami to continue running daily operations. A few days later, Premier prepared for its biggest sales event that would be aired on television and that Premier anticipated would result in a large number of orders. Silberman, however, stated that he was on vacation. Silberman failed to return calls from vendors and abandoned his day-to-day responsibilities as COO, undermining the fulfillment process. Counter-Plaintiffs state that this left Premier with a "bad industry tone," which has to date not dissipated despite Florencia and Jorge's best efforts. [ECF No. 47 at 18 ¶ 60]. Silberman eventually did not return to work, and Salomon demanded the return of the funds he used to purchase membership interests in Premier.[4]

---

[4] Counter-Plaintiffs allege that Silberman and Salomon previously purchased "a stake in a CBD company while installing Silberman as a high level employee. When they did not like the way things were going, [they] sued that business for securities fraud and demanded that [the] company . . . buy back the sold membership interests at full price." [ECF No. 47 at 17 ¶ 47].

## II.   Procedural History

On May 12, 2020, Counter-Defendants Silberman and AMJ filed the original Complaint against Counter-Plaintiffs, raising several securities and Florida-based claims. [ECF No. 1]. On June 26, 2020, Counter-Plaintiffs moved to dismiss the original Complaint. [ECF No. 11]. On November 16, 2020, the Court granted the motion to dismiss following a telephonic motion hearing. [ECF No. 31]. On December 16, 2020, Counter-Defendants Silberman and AMJ filed their Amended Complaint, raising similar securities and Florida-based claims. [ECF No. 34]. On January 13, 2021, Counter-Plaintiffs filed their Answer, Affirmative Defenses, and Counterclaim to the Amended Complaint. [ECF No. 47]. In the Counterclaim, Counter-Plaintiffs raise three counts against Counter-Defendants: (1) fraud in the inducement against Salomon, Sarita, and Silberman (Count I); (2) breach of fiduciary duty against Silberman (Count II); and (3) indemnification against Salomon (Count III). On February 9, 2021, Counter-Defendants filed the instant Motion. [ECF No. 55].

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120

(11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

## DISCUSSION

Although Counter-Plaintiffs' Counterclaim raises claims for fraud in the inducement, breach of fiduciary duty, and indemnification, Counter-Defendants' Motion only raises arguments as to the fraud in the inducement and the indemnification counts. Before the Court may address the merits of the Motion, it must first determine whether it has jurisdiction over the Counterclaim.

### I. The Court's Jurisdiction Over the Counterclaim

Counter-Plaintiffs state that the Court has supplemental jurisdiction over the Counterclaim, pursuant to 28 U.S.C. § 1367, because the claims "arise out of the transaction or occurrence that is the subject matter of Silberman and AMJ's claims." [ECF No. 47 at 12 ¶ 9]. "Federal courts are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) (quoting *Galindo-Del Valle v. Att'y Gen.*, 213 F.3d 594, 599 (11th Cir. 2000) (per curiam)). *See also Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 537 (11th Cir. 2015) ("[O]nce a district court possesses discretion to dismiss the supplemental claims, it must be continuously mindful regarding whether or not the factors favor dismissal."). The Court finds that it has discretion to exercise supplemental jurisdiction over the Counterclaim.

Where a district court has original jurisdiction over an action, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within

6

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim" if: (1) "the claim raises a novel or complex issue of State law;" (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;" (3) "the district court has dismissed all claims over which it has original jurisdiction;" or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c). Thus, "[d]etermining whether the Court has supplemental jurisdiction over state law claims entails a two-step inquiry where the Court must first determine whether it can exercise its supplemental jurisdiction and then whether it *should* exercise that jurisdiction." *Ariza v. Walters & Mason Retail, Inc.*, 516 F. Supp. 3d 1350, 1357 (S.D. Fla. 2021) (emphasis added) (citation and internal quotation marks omitted).

"The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)); *see also West v. City of Albany*, 830 F. App'x 588, 596 (11th Cir. 2020) (per curiam) (noting that a "district court's decision to either retain or reject" supplemental jurisdiction over state law claims is "purely discretionary" and "not a jurisdictional matter." (citation omitted)). As announced in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), a district court should consider the factors of judicial economy, convenience, fairness, and comity before doing so. *West*, 830 F. App'x at 597 (citations omitted). The *Gibbs* factors "may, by their presence or absence, influence the court in its decision concerning the exercise of such discretion" to retain or reject supplemental jurisdiction. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).

In the Counterclaim, Counter-Plaintiffs raise three state-based claims: (1) Fraud in the Inducement as to all Counter-Defendants (Count I); (2) Breach of Fiduciary Duty as to Counter-Defendant Silberman (Count II); and (3) Indemnification as to Counter-Defendant Salomon (Count III). [ECF No. 47]. While Counter-Plaintiffs introduce two new parties to the litigation—Counter-Defendants Salomon and Sarita—the underlying factual allegations remain the same and the claims are closely related to those alleged in the Amended Complaint. *See Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-CIV-81004, 2009 WL 10667039, at *3 (S.D. Fla. July 2, 2009) (finding supplemental jurisdiction existed where issues presented in counterclaims were related to those claims for relief raised by the plaintiff). Counter-Plaintiffs sought to sell membership interests in their new health and beauty business—Premier Beauty and Health LLC—selling products infused with CBD ingredients. After the parties spoke to one another and negotiated a deal, Counter-Defendants purchased membership interests in Premier and Counter-Plaintiffs hired Counter-Defendant Silberman as the COO. The parties dispute each other's intention for selling and purchasing membership interests, as well as who is to blame for the management—or mismanagement—of Premier.

Additionally, both parties raise similar state-based claims based on these factual allegations. *Compare* [ECF No. 34] (raising breach of fiduciary duty and fraudulent inducement claims in the Amended Complaint), *with* [ECF No. 47] (raising breach of fiduciary duty and fraudulent inducement claims in the Counterclaim). Those state-based claims in the Amended Complaint and Counterclaim do not raise novel or complex issues of Florida law, nor do they predominate over the federal claims in the Amended Complaint, which are based in the Securities and Exchange Act, 28 U.S.C. § 1367(c). The Court has not dismissed those claims for which it has original jurisdiction, *see id.* § 1367(c)(3), nor does the Court find that exceptional circumstances

8

exist that would warrant declining to exercise supplemental jurisdiction, *see id.* § 1367(c)(4). Because the underlying factual allegations of the state-based claims in the Amended Complaint and Counterclaim are intertwined, "judicial economy, convenience, fairness and expediency, as well as avoidance of substantial duplication of the parties' and the court's time and effort, fully justify the exercise of supplemental jurisdiction over the . . . Counterclaim[]." *Rosenbaum*, 2009 WL 10667039, at *4. Therefore, the Court shall exercise supplemental jurisdiction over the Counterclaim.

## II.    Fraud in the Inducement (Count I)

Counter-Defendants move to dismiss Counter-Plaintiffs' fraud in the inducement claim on several bases. First, Counter-Defendants argue that the fraud in the inducement claim fails to meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b). [ECF No. 55 at 3–9]. Second, Counter-Defendants argue that the fraud in the inducement claim is a shotgun pleading. *Id.* at 9–11. Third, Counter-Defendants argue that Counter-Plaintiffs fail to properly plead the elements of a fraud in the inducement claim under Florida law. *Id.* at 11. Counter-Plaintiffs concede that they have not properly plead its fraud in the inducement claim because they do not allege that Counter-Defendants knew their statements were false. [ECF No. 62 at 8]. However, Counter-Plaintiffs argue that their claim otherwise satisfies the heightened pleading standard of Rule 9(b) and is not a shotgun pleading. *Id.* at 3–8.

> To state a claim for fraudulent inducement in Florida, a plaintiff must allege:
>
> (1) a misrepresentation of a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation.

*Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1281 n.7 (S.D. Fla. 2021) (quoting *Sea Shelter IV, LLC v. TRG Sunny Isles V, Ltd.*, No. 08-CIV-21767, 2009 WL 692469, at

9

\*5 (S.D. Fla. Mar. 17, 2009)). In federal court, claims for fraudulent inducement are governed by Federal Rule of Civil Procedure 9(b), *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1368 (S.D. Fla. 2011), which requires that the plaintiff "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, the plaintiff must state:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Giuliani v. NCL (Bahamas) Ltd.*, No. 20-CIV-22006, 2021 WL 2573133, at \*3 (S.D. Fla. June 23, 2021) (quoting *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1206 (S.D. Fla. 2020)). *See also Frayman*, 515 F. Supp. 3d at 1281 ("Claims that sound in fraud . . . must be stated with particularity."). "[T]o pass Rule 9(b) muster, the Complaint must set forth the particular allegations about the 'who, what, when, where, and how' of the fraud." *Giuliani*, 2021 WL 2573133, at \*3 (quoting *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016)). "This rule ensures defendants are alerted to the precise misconduct alleged and protects against 'spurious charges of immoral and fraudulent behavior.'" *Merino v. Ethicon Inc.*, --- F. Supp. 3d ---, No. 20-CIV-25308, 2021 WL 1749967, at \*11 (S.D. Fla. May 4, 2021) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

Upon reviewing the factual allegations in the Counterclaim, the Court finds that Counter-Plaintiffs fail to properly plead their fraud in the inducement claim. As previously noted, Counter-Plaintiffs concede that they fail to properly allege Counter-Defendants' knowledge of the alleged falsity of the statements made to Counter-Plaintiffs. [ECF No. 62 at 8]. Moreover, the factual

allegations in the Counterclaim fail to satisfy the heightened pleading standard of Rule 9(b) for several reasons.

First, Counter-Plaintiffs make inconsistent allegations about who made the false statements about Silberman's experience in the CBD market and requisite experience to be a COO. *Compare* [ECF No. 47 at 13 ¶ 21] (alleging that Sarita made the fraudulent statements), *with id.* at 14 ¶¶ 27–28 (alleging that Salomon and Sarita made the fraudulent statements), *and id.* at 14 ¶ 29 & 17 ¶ 48 (alleging that Salomon, Sarita, and Silberman made the fraudulent statements). Second, the only specific statements identified by Counter-Plaintiffs are too vague to support their claim. *See id*. at 13 ¶ 21 ("Sarita explained that Silberman had recently left a CBD company and had an abundance of experience in the CBD product marketplace."). Counter-Plaintiffs fail to show how the phrase, "abundance of experience in the CBD product marketplace," is quantifiable or otherwise a materially false statement. Third, Counter-Plaintiffs vaguely reference dates when the statement (or statements) was made. *See id.* at 13–14 ¶¶ 23 & 26. Finally, the Counterclaim fails to state where the alleged fraudulent statements were made. In essence, the Counterclaim fails to properly allege the "who, what, when, where, and how" of the fraudulent statements that induced Counter-Plaintiffs. *Giuliani*, 2021 WL 2573133, at *3 (quoting *Ceithaml*, 207 F. Supp. at 1353). *See also Oginsky*, 784 F. Supp. 2d at 1366 (finding that vague statements that the defendant "falsely represented that all monies paid toward the land purchases were 100% refundable" did not meet the Rule 9(b) pleading standard); *Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1223 (S.D. Fla. 2010) ("The Complaint fails to identify the time and place of the alleged statements regarding the insurance policies, who made those statements, and what [i]nformation [the defendant] had or could have had in its possession to indicate that the statements were false when made."). And, while Counter-Plaintiffs provide sufficient allegations as to what Silberman and

Salomon obtained from the alleged fraudulent statements, they fail to allege what Sarita obtained from making those statements.

Because Counter-Plaintiffs fail to properly plead the elements of their fraud in the inducement claim or meet the heightened pleading standard under Rule 9(b), the Motion shall be granted as to Count I of the Counterclaim.[5]

### III.     Indemnification (Count III)

Counter-Defendants also move to dismiss Counter-Plaintiffs' indemnification claim against Salomon, arguing that Counter-Plaintiffs fail to allege that they are entirely without fault. [ECF No. 55 at 12]. Counter-Plaintiffs argue that while they "may not have pled the buzz-words," their allegation that "[i]f anything was ever misrepresented to AMJ, it would have been at the hands of Salomon" was sufficient. [ECF No. 62 at 9].

> To properly allege common law indemnity, a plaintiff must establish that:
>
> (1) the party seeking indemnity must be without fault; (2) the party from whom he is seeking indemnity is wholly at fault; and (3) the party seeking indemnity is liable to the injured party only because it is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity.

*Underwriters at Int. v. All Logistics Grp., Inc.*, 483 F. Supp. 3d 1199, 1208 (S.D. Fla. 2020) (citing *Heapy Eng'g, LLP v. Pure Lodging, Ltd.*, 849 So. 2d 424, 425 (Fla. 1st DCA 2003)). "Moreover, recovery for common law indemnity is precluded if both parties are at fault, no matter how slight the fault of the party seeking indemnity." *Id.* "To be wholly without fault means that the basis of the claim for indemnification does not arise out of any conduct or act of the party seeking indemnification." *Id.*

---

[5] Because the Court finds that Counter-Plaintiffs fail to properly allege their fraud in the inducement claim, it need not address Counter-Defendants' arguments as to Count I of the Counterclaim being a shotgun pleading.

Paragraph 82 of the Counterclaim states: "Any representations initially made with regard to Premier and the purchase of membership interests were made to Salomon. If anything was ever misrepresented to AMJ, it would have been at the hands of Salomon." [ECF No. 47 at 21 ¶ 82]. This factual allegation, alone, is insufficient to state a claim for common law indemnification. First, Counter-Plaintiffs fail to clearly identify the injured party or who caused the injury. Counter-Plaintiffs allege that they were sued by Silberman because of Salomon's "false pretenses." *Id.* at 21 ¶ 80. However, they never specifically allege that Silberman was actually injured or that Salomon caused his injury. *See id.* ("Salomon did in fact cause **Premier, Jorge and Florencia** to be sued by Silberman." (emphasis added)). Second, Counter-Plaintiffs fail to clearly allege that they are without fault to the injured party or parties. *Contra Osorio v. State Farm Bank, F.S.B.*, 857 F. Supp. 2d 1312, 1314 (S.D. Fla. 2012) (finding that the defendant satisfied the pleading standard by alleging that it was without fault in causing the plaintiff's alleged damages). While Counter-Plaintiffs allege that Salomon was responsible for any misrepresentations to AMJ, [ECF No. 47 at 21 ¶ 82], they fail to allege that Salomon is wholly at fault and that they are only vicariously, constructively, derivatively, or technically liable for Salomon's wrongful acts. *See Underwriters*, 483 F. Supp. 3d at 1208.

As Counter-Plaintiffs fail to properly plead the elements of their indemnification claim, the Motion shall also be granted as to Count III of the Counterclaim.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Counter-Defendants', Aaron Silberman, AMJ Misil AB LLC, Salomon Mishaan, and Sarita Mishaan, Motion to Dismiss Counter-Plaintiffs' Counterclaim, [ECF No. 55], is **GRANTED**.

2. Counter-Plaintiffs', Premier Beauty and Health LLC, Florencia Hane, and Jorge Hane, Counterclaim, [ECF No. 47], is **DISMISSED without prejudice** as to Count I and Count III.

3. Counter-Plaintiffs may request leave to file an amended counterclaim as to Count I and Count III on or before **October 6, 2021**. Failure to do so will result in the Court dismissing those Counts *with prejudice*.[6]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of September, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[6] If Counter-Plaintiffs wish to amend their Counterclaim, they must request leave to file an amended counterclaim in a properly filed motion before the Court. *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (citation omitted)). *See also Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (stating that "[f]iling a motion is the proper method to request leave to amend a complaint," and in moving for leave to amend, a plaintiff must comply with Federal Rule of Civil Procedure 7(b) by either "set[ting] forth the substance of the proposed amendment or attach[ing] a copy of the proposed amendment").