UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21984-CIV-GAYLES/OTAZO-REYES

AARON SILBERMAN and
AMJ MISIL AB LLC,

    Plaintiffs

v.

PREMIER BEAUTY AND HEALTH LLC,
JORGE HANE,
and FLORENCIA HANE,

    Defendants.
_____/

**REPORT AND RECOMMENDATION RE:
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    THIS CAUSE came before the Court upon:

    1.    Defendants Premier Beauty and Health LLC ("Premier"), Jorge Hane ("Mr. Hane"), and Florencia Hane's ("Ms. Hane") (collectively, "Defendants") Motion for Partial Summary Judgment as to Counts I–V and VIII of the Amended Complaint filed by Plaintiffs AMJ Misil AB LLC's ("AMJ") and Aaron Silberman ("Mr. Silberman") (together, "Plaintiffs") (hereafter, "Defendants' Motion for Summary Judgment") [D.E. 264];

    2.    Plaintiff AMJ's Motion for Final Summary Judgment as to Counts I–VII and IX of Plaintiffs' Amended Complaint (hereafter, "AMJ's Motion for Summary Judgment") [D.E. 268]; and

    3.    Plaintiff AMJ's Amended Motion for Partial Summary Judgment (hereafter, "AMJ's Amended Motion for Summary Judgment") [D.E. 316].

    These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the

Honorable Darin P. Gayles, United States District Judge [D.E. 309]. The undersigned held a hearing on these matters (hereafter, "Hearing") on May 11, 2023 [D.E. 343]. For the reasons stated below, the undersigned respectfully recommends that the Court DENY Defendants' Motion for Summary Judgment, Plaintiff AMJ's Motion for Summary Judgment, and Plaintiff AMJ's Amended Motion for Summary Judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

This lawsuit arises out of Premier's sale of a membership interest to AMJ in exchange for AMJ's investment of $450,000 in Premier. See Am. Compl. [D.E. 34 at 1–2]. Plaintiffs allege that Mr. Hane and Ms. Hane solicited investments on behalf of Premier, a business engaged in selling consumer beauty and health products containing cannabidiol ("CBD"); and that Mr. Hane and Ms. Hane effectively controlled Premier "to the exclusion of any other member". Id. at 2, 4. AMJ invested in Premier through its principal, Mr. Silberman, who is Mr. Hane's nephew by marriage. See Transcript of Deposition of Mr. Silberman (hereafter, "Silberman Depo."), Ex. A to Defs.' Statement of Material Facts [D.E. 266-1 at 30, 89];[1] Defs.' Statement of Material Facts [D.E. 266 ¶ 21]; AMJ's Resp. to Defs.' Statement of Material Facts [D.E. 282 ¶ 21]. Silberman testified that he worked for Premier as its Chief Operating Officer ("COO") pursuant to an oral employment agreement with Premier, and that he received an annual salary of $120,000.00 in addition to a bonus structure based on earned revenues. See Silberman Depo. [D.E. 266-1 at 97–100]. However, Mr. Silberman's employment with Premier ended after several months, with the parties disputing the duration of that employment and whether Mr. Silberman quit or was terminated. Compare Defs.' Statement of Material Facts [D.E. 266 ¶ 56]; with AMJ's Resp. to Defs.' Statement of Material Facts [D.E. 282 ¶ 56].

---

[1] The page citations to Exhibit A [D.E. 266-1 at __] are to the court record pages rather than the transcript pages.

On December 16, 2020, Plaintiffs filed their Amended Complaint, asserting the following federal and state law claims against Defendants:

| | | |
|---|---|---|
| Count I: | Violation of Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77*l*(a)(1), against all Defendants by AMJ. |
| Count II: | Violation of Section 15 of the Securities Act, 15 U.S.C. § 77o, against Mr. Hane and Ms. Hane by AMJ. |
| Count III: | Violation of Securities and Exchange Act Section 10(b), 17 C.F.R. § 240.10b-5, against all Defendants by AMJ. |
| Count IV: | Violation of Securities and Exchange Act Section 20(a), 15 U.S.C. § 78t, against Mr. Hane and Ms. Hane by AMJ. |
| Count V: | Violation of Florida Securities and Investor Protection Act, Fla. Stat. § 517.301, against all Defendants by AMJ. |
| Count VI: | Breach of Fiduciary Duties against Ms. Hane by AMJ. |
| Count VII: | Fraudulent Inducement against all Defendants by AMJ. |
| Count VIII: | Breach of Employment Agreement against Premier by Mr. Silberman. |
| Count IX: | Breach of Membership Interest Purchase Agreement against Premier by AMJ. |

See Am. Compl. [D.E. 34 at 25–59].

On February 15, 2023, Defendants and AMJ, respectively, moved for summary judgment on a limited number of Counts in the Amended Complaint. See Defs.' Mot. for Summ. J. [D.E. 264] (Counts I–V and VIII); AMJ's Mot. for Summ. J. [D.E. 268] (Counts I–VII and IX). On April 13, 2023, the undersigned granted AMJ leave to file an amended motion for summary judgment and corresponding amended statement of facts for purposes of referring to English translation documents that replaced the originally filed Spanish documents as exhibits to AMJ's original statement of facts. See Order [D.E. 315]. On April 19, 2023, AMJ filed its Amended Motion for Summary Judgment [D.E. 316] and Amended Statement of Material Facts [D.E. 317].

Given the limited scope of AMJ's amendments, the undersigned deems AMJ's original Motion for Summary Judgment [D.E. 268] to be subsumed in its Amended Motion for Summary Judgment [D.E. 316].

As previously noted, Defendants have moved for summary judgment only as to Counts I–V and VIII of the Amended Complaint. See Defs.' Mot. for Summ. J. [D.E. 264]. As to Counts I-V, Defendants argue that: (1) those claims fail as a matter of law because Defendants did not sell to AMJ an investment contract, as defined in the Securities Act of 1933, 15 U.SC. §§ 77a–77aa; (2) alternatively, if the Court finds that the membership interest in Premier was an investment contract, the investment was exempt from registration under Section 4(a)(2) of the Securities Act, 15 U.S.C. § 77d(a)(2) (hereafter, "Section 4(a)(2) of the Securities Act"), and Rule 506 of the Securities and Exchange Commission's ("SEC") Regulation D, 17 C.F.R. § 230.506 (hereafter, "Rule 506"); and (3) even if Defendants deviated from the requirements of Rule 506, the investment contract was exempt from registration because Defendants made good faith attempts to comply with 17 C.F.R. § 230.508 (hereafter, "Rule 508"). Finally, Defendants argue as to Count VIII that Mr. Silberman has failed to establish that Premier breached his alleged oral employment agreement. See id. at 4–18.

Also as previously noted, AMJ has cross-moved for summary judgment on Counts I–V, VII and IX. See AMJ's Am. Mot. for Summ. J. [D.E. 316]. According to AMJ: (1) Defendants violated Sections 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(1) (hereafter, "Section 12(a)(1)"), and Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o (hereafter, "Section 15"), because the membership interest Premier sold to AMJ constitutes an investment contract that Premier was required to register under federal securities law; (2) Defendants violated jointly and severally Section 10(b) of the Securities and Exchange Act and 17 C.F.R. § 240.10b-5 (commonly

4

known as, "SEC Rule 10b-5"), as well as the Florida Securities and Investor Protection Act, Fla. Stat. § Section 517.301 (hereafter, "Section 517.301 of the Florida Statutes"), because they falsely represented that their CBD-based cosmetic and health products were proprietary;[2] (3) Ms. Hane breached her fiduciary duty to AMJ by misappropriating AMJ's investment funds, failing to distribute Premier's profits to its members, and preventing AMJ from accessing Premier's accounting records; (4) Defendants fraudulently induced AMJ into investing in Premier; and (5) Premier breached the Membership Purchase Agreement it had with AMJ.  See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 4–48]; AMJ's Am. Statement of Material Facts [D.E. 317 ¶ 3].  The undersigned addresses the parties' arguments below.

## **STANDARD OF REVIEW**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (hereafter "Rule 56(a)") "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  Fonseca v. Wal-Mart Stores, E., LP, No. 18-CV-62768, 2019 WL 7371813, at *2 (S.D. Fla. 2019) (quoting Anderson, 477 U.S. at 248).

The movant must support its assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R.

---

[2] Mr. Hane's and Ms. Hane's purported joint and several liability is based on Section 20(a) of the Securities and Exchange Act, 15 U.S.C. § 78t ("Section 20(a) of the Exchange Act").

Civ. P. 56(c)(1)(A).

When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the nonmoving party." Smith v. Royal Caribbean Cruises, Ltd., 620 F. App'x 727, 729 (11th Cir. 2015). Courts "resolve factual controversies in favor of the nonmoving party [] only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id. (emphasis in original).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion." Torres v. Rock & River Food Inc., 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." Torres, 244 F. Supp. 3d at 1327 (internal quotation marks and citation omitted). "[A] court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Id. at 1327–28.

## **THE SECURITIES LAWS CROSS-MOTIONS ON COUNTS I–V**

Initially, the undersigned addresses the Cross-Motions with respect to the Securities Laws claims in the Amended Complaint by discussing the parties' arguments as to: Count I; Counts II and IV together; and Counts III and V together. The undersigned concludes that neither party is entitled to judgment as a matter of law on these claims.

6

**A. Violation of Section 12(a)(1) of the Securities Act (Count I) against all Defendants**

Section 12(a)(1) of the Securities Act makes it unlawful to offer or sell an unregistered security in violation of Section 5 of the Securities Act, 15 U.S.C. § 77e. See 15 U.S.C. § 77*l*(a)(1); Hodges v. Harrison, 372 F. Supp. 3d 1342, 1347 (S.D. Fla. 2019). "To establish a prima facie case under Section 12, the plaintiff must allege (1) the sale or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer." Rensel v. Centra Tech, Inc., No. 17-24500-Civ, 2019 WL 2085839, at *3 (S.D. Fla. May 13, 2019); see also Hodges, 372 F. Supp. 3d at 1347–48 (outlining the requirements for prevailing on a Section 5 violation, which are necessary for a Section 12 claim). "The definition of a 'security' under the Securities Act includes 'investment contract(s).' 'An offering is an investment contract if there is: (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits to come solely from the efforts of others.'" Hodges, 372 F. Supp. 3d at 1348 (citing Tippens v. Round Island Plantation, LLC, No. 09-CV-14036, 2009 WL 2365347, at *9 (S.D. Fla. July 31, 2009)); see also SEC v. W.J. Howey Co., 328 U.S. 293, 298 (1946) (same).

"The thrust of the common enterprise element test is the investors have no desire to perform the chores necessary for a return, and are attracted to the investment solely by the prospects of a return." Eberhardt v. Waters, 901 F.2d 1578, 180–81 (11th Cir. 1990). With respect to this third prong, namely, expectation of profits from others, "the touchstone of the test is an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." Tippens, 2009 WL 2365347, at *9 n.9 (quotations and citations omitted); SEC v. Merch. Capital, LLC, 483 F.3d 747, 755 (11th Cir. 2007) ("the focus is on the dependence of the investor on the entrepreneurial or managerial skills of a promoter

or other party"). "An investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others." Alumni v. Dev. Res. Grp., LLC, 445 F. App'x 288, 296 (11th Cir. 2011) (quotations and citations omitted). "The fact that the investor has delegated management duties or has chosen to rely on some other party does not establish dependency. The investor must have no reasonable alternative to reliance on that person." Id. (quotations and citations omitted).

AMJ argues that the elements of an investment contract have been satisfied here because AMJ invested money in a common enterprise, Premier, with the expectation of profits to come solely from Mr. Hane's and Ms. Hane's efforts. See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 8–21]. Specifically, AMJ argues that, under Premier's Operating Agreement, Ms. Hane had the exclusive authority to manage and operate Premier, including, but not limited to: the "exclusive right to vote on all matters relating to Premier"; "a majority vote in Premier"; "the absolute power to manage [Premier and] the authority to take all necessary and proper actions on behalf of [Premier]"; "the absolute power to make distributions . . . and elect how Premier is taxed"; and "the absolute power to set the price of the sale of any interest in Premier". Id. at 15–17; Operating Agreement, Ex. E to AMJ's Am. Statement of Material Facts [D.E. 317-9]. AMJ further argues that it "did not exercise any control over Premier in practice" because its principal, Mr. Silberman, did not control the operations or financial management of Premier but was instead an inexperienced officer of Premier who was dependent on the tutelage of Mr. Hane and only oversaw administrative tasks for Premier. See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 18–21]; AMJ's Resp. to Defs.' Mot. for Summ. J. [D.E. 281 at 5–9]. Lastly, AMJ contends that Defendants violated Section 12(a)(1) of the Securities Act because Mr. Hane and Ms. Hane were statutory "sellers" in that they solicited AMJ's investment in Premier and used email "as an instrumentality

of interstate commerce" to sell an unregistered security, to wit, the investment contract. See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 21–23].

Defendants argue, however, that there was no investment contract between AMJ and Defendants because the elements of common enterprise and the expectation of profits are absent in this case. See Defs.' Mot. for Summ. J. [D.E. 264 at 5–10]; Defs.' Response to AMJ's Am. Mot. for Summ. J. [D.E. 322 at 7–10]. Defendants contend that Mr. Silberman, acting on behalf of AMJ and as the COO of Premier, was not reliant on Defendants for turning a profit. See Defs.' Mot. for Summ. J. [D.E. 264 at 5–10]. Rather, Mr. Silberman was purportedly an experienced investor with prior management experience and knowledge about the CBD business, and, more importantly, with the "ability to bind [Premier] contractually, authority to sign checks, and unfettered control over financials and accounting." Id. at 10. Defendants further argue that, contrary to AMJ's argument, AMJ did not need to have complete and exclusive control over Premier to control the profitability of its investment and that, because AMJ was the only investor in Premier, there was no common enterprise. See id. at 5, 9; see also Defs.' Resp. to AMJ's Am. Mot. for Summ. J. [D.E. 322 at 7] (citing Sunshine Kitchens v. Alanthus Corp., 403 F. Supp. 719, 722 (S.D. Fla. 1975)). Given these contradictory contentions, the undersigned concludes that a genuine issue of material fact exists as to whether Defendants sold a security to AMJ in the form of an investment contract.

Accordingly, neither side is entitled to summary judgment on Count I of the Amended Complaint for breach of Section 12(a)(1) of the Securities Act.

### B. Violation of Section 15 of the Securities Act (Count II) and Section 20(a) of the Exchange Act (Count IV) against Mr. Hane and Ms. Hane

Section 15 of the Securities Act provides:

Every person who, by or through stock ownership, agency, or otherwise, or who,

> pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* (Section 12 of the Securities Act) of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.  "[T]o state a claim for controlling person liability against a defendant, it must be alleged that the defendant had (1) the power to control the general affairs of the entity primarily liable for the [Section 12 of the Securities Act] violation at the time of the violation and (2) the power to control or influence the specific policy that resulted in primary liability under [Section 12]." In re Unicapital Corp. Sec. Lit., 149 F. Supp. 2d 1353, 1367 (S.D. Fla. 2001).  "Naturally, if there is no primary violation under [Section 12 of the Securities Act] there can be no vicarious liability under § 15." Id.  Moreover, "[t]he controlling person analysis under § 15 of the Securities Act and § 20 of the Exchange Act [are] identical." Id. at 1374, n. 22.

Mr. Hane and Ms. Hane argue that, because AMJ's claim under Section 12(a)(1) of the Securities Act fails, they are entitled to summary judgment on AMJ's controlled person liability claims under Section 15 of the Securities Act and Section 20 of the Exchange Act.  See Defs.' Mot. for Summ. J. [D.E. 264 at 17–18].  Conversely, AMJ argues that it is entitled to summary judgment on these claims because Mr. Hane and Ms. Hane were "controlling persons" of Premier and "were both culpable participants in the violation of Section 12(a)(1) of the Securities Act by Premier".  See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 26].  However, as discussed above, genuine issues of material fact exist as to AMJ's claim for violation of Section 12(a)(1) asserted in Count I.  Additionally, the degree of control that Mr. Hane and Ms. Hane had over Premier is also disputed.  Thus, neither party is entitled to summary judgment on AMJ's claims for violations of Section 15 of the Securities Act (Count II) or Section 20(a) of the Exchange Act (Count IV)

against Mr. Hane and Ms. Hane.

### C. Violation of SEC Rule 10b-5 (Count III) and Section 517.301 of the Florida Statutes (Count V)

To state a claim for relief under SEC Rule 10b-5, a plaintiff must establish "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1236–37 (11th Cir. 2008). "The test for materiality in the securities fraud context is 'whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." Merch. Capital, LLC, 483 F.3d at 766. Section 517.301 of the Florida Statutes contains similar language:

> It is unlawful and a violation of the provisions of this chapter for a person, in connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security . . . to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Fla. Stat. § 517.301(1)(a)(2). Thus, "Section 517.301 is the Florida state analogue to SEC Rule 10b-5." Greenfield v. Squidvision Corp., No. 21-CV-60944, 2023 WL 2734225, at *6 (S.D. Fla. Mar. 31, 2023).

Defendants argue that AMJ's claims under SEC Rule 10b-5 and Section 517.301 of the Florida Statutes fail as a matter of law because there was no sale of a security. See Defs.' Mot. for Summ. J. [D.E. 264 at 17]; Defs.' Response to AMJ's Am. Mot. for Summ. J. [D.E. 322 at 15–16]. However, as previously discussed, a genuine issue of material fact exists as to whether the membership interest sold to AMJ constitutes a security in the form of an investment contract. Moreover, as to the element of material misrepresentation, AMJ argues that Defendants

11

misrepresented that "the products and formulas" at issue "were proprietary". See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 29–33, 38–39]. On the other hand, Defendants contend that they did not make any misrepresentations about the proprietary nature of Premier's CBD-based cosmetic products because Mr. Silberman, acting as a principal of AMJ, conceded that prior to investing in Premier, AMJ knew that Premier added specific amounts of CBD to a base it acquired from another cosmetic company to create its own product. See Defs.' Resp. to AMJ's Am. Mot. for Summ. J. [D.E. 322 at 16]. Thus, a genuine issue of material fact exists regarding whether Defendants misrepresented the proprietary nature of their CBD-based cosmetic product prior to AMJ investing in Premier. Therefore, neither party is entitled to summary judgment on Counts III and V of the Amended Complaint.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT VIII

Count VIII of the Amended Complaint alleges that Premier breached Mr. Silberman's employment agreement by failing to make salary payments to him for the month of February 2020 while he was allegedly still employed by Premier. See Am. Compl. [D.E. 34 at 58]. Defendants argue that they are entitled to judgment as a matter of law on Count VIII of the Amended Complaint because Mr. Silberman is "unable to establish what term or terms" of his alleged oral employment agreement with Premier were breached. See Defs.' Mot. for Summ. J. [D.E. 264 at 18]. As support for this argument, Defendants contend that Mr. Silberman testified at his deposition to receiving the salary he had negotiated "for the six-month period from August, 2019 through January, 2020 that he worked, inclusive ($10,000 each month)." See id. at 19. However, Defendants' fail to address Mr. Silberman's contention that he was not paid for the month of February 2020. Indeed, as noted by AMJ, Mr. Silberman testified at his deposition that he worked for Premier through February 2020 but did not receive his salary for that month. See Silberman

Dep. [D.E. 265 at 239–40]; see also AMJ's Resp. to Defs.' Statement of Material Facts [D.E. 282 ¶ 56]. Thus, there exists a genuine issue of material fact as to whether Premier breached Mr. Silberman's employment contract by not paying him for work he performed in the month of February 2020. Accordingly, Defendants are not entitled to summary judgment on Count VIII of the Amended Complaint.

## PLAINTIFF AMJ'S AMENDED MOTION FOR SUMMARY JUDGMENT ON COUNT VI

In Count VI of the Amended Complaint, AMJ brings a claim for breach of fiduciary duties under Florida Statute Section 605.04091 against Ms. Hane. See Am. Compl. [D.E. 34 at 56]. Under Section 605.04091, a manager or member of a "member-managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company." Fla. Stat. § 605.04091(1). The duty of loyalty includes: "accounting to the limited liability company and holding as trustee for it any property, profit, or benefit derived by the manager or member"; "refraining from dealing with the company . . . as, or on behalf of, a person having an interest adverse to the company"; and "refraining from competing with the company in the conduct of the company's activities and affairs". Id. § 605.04091(2). The duty of care under the statute includes refraining from "engaging in grossly negligent or reckless conduct, willful or intentional misconduct, or a knowing violation of law." Id. § 605.04091(3).

AMJ argues that it is entitled to summary judgment on Count VI of the Amended Complaint because Ms. Hane, as the manager of Premier, owed fiduciary duties of loyalty and care to AMJ and breached those duties by: (a) "misappropriating AMJ's investment funds and failing to distribute Premier's profits to Premier's members"; (b) "preventing AMJ from accessing Premier's books and records" and failing to provide AMJ with reasonable access to those records; and (c) selling products that compete with Premier. See AMJ's Am. Mot. for Summ. J. [D.E. 316

13

at 42–43]. AMJ further argues that Ms. Hane transferred an amount exceeding $100,000.00 from Premier's bank account to her personal bank account under the guise that the transfer was a distribution of profits and a sale of her membership interest in Premier to AMJ. See id. at 44; AMJ's Am. Statement of Material Facts [D.E. 317 ¶ 28]. AMJ further argues that, on April 13, 2020, it made a formal request for Premier's books and records but that the request was denied. See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 42–43]; AMJ's Am. Statement of Material Facts [D.E. 317 at 11].

Although Ms. Hane does not dispute that she owed duties of loyalty and care to AMJ, she disputes that she breached either of those duties. See Defs.' Resp. to AMJ's Am. Mot. for Summ. J. [D.E. 322 at 17–18]. Specifically, Ms. Hane disputes that she improperly transferred any money from Premier for personal gain and claims that the $100,000.00 payment in question was a payment that the parties had agreed upon for AMJ's purchase of a membership interest in Premier. See Defs.' Resp. to AMJ's Am. Statement of Material Facts [D.E. 321 ¶¶ 27–28]. Ms. Hane also disputes that the transfer in question was taken from any of Premier's profits on the grounds that Premier did not generate any profits. See Defs.' Resp. to AMJ's Am. Mot. for Summ. J. [D.E. 322 at 17]. Finally, Ms. Hane disputes that AMJ's request for Premier's books and records was denied or that she improperly sold products to compete with Premier. Id. at 17–18; Defs.' Resp. to AMJ's Am. Statement of Material Facts [D.E. 321 ¶¶ 24–26, 31]. Thus, a genuine issue of material fact exists as to whether Ms. Hane breached her duties of loyalty and care to AMJ. Accordingly, AMJ is not entitled to summary judgment on its claim for breach of fiduciary duties against Ms. Hane (Count VI).

### PLAINTIFF AMJ'S AMENDED MOTION FOR SUMMARY JUDGMENT ON COUNT VII

In Count VII of the Amended Complaint, AMJ brings a claim against Defendants for

fraudulent inducement in connection with the offer and sale of a membership interest in Premier. See Am. Compl. [D.E. 34 at 57–58]. To prevail on its claim for fraudulent inducement, AMJ would have to prove that Defendants: "1) misrepresented a material fact, 2) knew or should have known of the falsity of the statement, 3) intended that the misrepresentation would induce [AMJ] to act on it and 4) that [AMJ] suffered injury in justifiable reliance on the misrepresentation." Witt v. La Gorce Country Club, Inc., 35 So. 3d 1033, 1039–40 (Fla. 3d DCA 2010). "Generally, a fraud claim is not appropriate for summary judgment and better suited for trial because the questions of intent, knowledge and reliance depend on factual determinations." State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc., No. 6:06-cv-1757-Orl-GJK, 2008 WL 11337326, at *3 (S.D. Fla. Dec. 18, 2008).

AMJ argues that the facts of this case "conclusively establish" that Defendants misrepresented material facts regarding the proprietary nature of Premier's CBD-based cosmetic products, its previous financial offers and projections, and its financial liabilities. See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 46–47]; AMJ's Am. Statement of Material Facts [D.E. 317 ¶¶ 20–23, 27–28]. AMJ further argues that these purported material misrepresentations were done intentionally by Defendants and that AMJ relied on these misrepresentations to its detriment. Id. However, Defendants dispute that they misrepresented their prior financial offers, projections, or liabilities or that they misrepresented the proprietary nature of their CBD-based cosmetic products; and have proffered evidence that Mr. Silberman, acting on behalf of AMJ, knew of Premier's financial offers and liabilities as well as how Premier had created its own CBD-based product. See Defs.' Resp. to AMJ's Am. Mot. for Summ. J. [D.E. 322 at 18–19]; Defs.' Resp. to AMJ's Am. Statement of Material Facts [D.E. 321 ¶¶ 20–23, 27–28]. Defendants further argue that AMJ did not detrimentally rely on any representation from Defendants because Mr. Silberman, again acting

as the principal of AMJ, knew "everything he complains of now" and, through AMJ, "bought more of" an interest in Premier with that knowledge. See Defs.' Resp. to AMJ's Am. Mot. for Summ. J. [D.E. 322 at 19]. Thus, a genuine issue of material fact exists as to whether Defendants fraudulently induced AMJ into purchasing a membership interest in Premier. Accordingly, AMJ is not entitled to summary judgment on its claim for fraudulent inducement (Count VII).

### PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT ON COUNT IX

In Count IX of the Amended Complaint, AMJ alleges that Premier breached Section 5(iii)(c) of the Membership Interest Purchase Agreement (hereafter, "Agreement") it had with AMJ. See Am. Compl. [D.E. 34 at 59–60]. Section 5(iii)(c) of the Agreement provides, in relevant part:

> Neither the execution and delivery of this Agreement nor the consummation of the sale of the Membership Interests to PURCHASER will . . . (c) violate any statute or law or any judgment . . . applicable to SELLERS or any of its Subsidiaries except . . . for such matters which are not likely to have a material adverse effect on the business or financial condition of SELLERS taken as a whole.

See Ex. A. to Am. Compl. [D.E. 34 at 65]. AMJ contends that Premier violated this section of the Agreement by virtue of Premier's violation of Section 12(a)(1) of the Securities Act (Count I), Section 10(b) of the Exchange Act (Count II), and the Florida Securities and Investor Protection Act (Count V). See AMJ's Am. Mot. for Summ. J. [D.E. 316 at 49]. However, as discussed above, AMJ is not entitled to judgment as a mater of law with respect to Counts I, II, and V. Therefore, it cannot be said, as a matter of law, that Premier violated Section 5(iii)(c) the Agreement as alleged in Count IX. Therefore, AMJ is not entitled to summary judgment on Count IX of the Amended Complaint.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendants Motion for Summary Judgment [D.E. 264] be DENIED; and that Plaintiff AMJ's Motion for Summary Judgment [D.E. 268] and Plaintiff AMJ's Amended Motion for Summary Judgment [D.E. 316] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P.-3).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 31st day of August, 2023.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Darrin P. Gayles
      Counsel of Record